DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Defendant, Montell D. Johnson ("Defendant"), appeals from his conviction in the Lorain County Court of Common Pleas. We affirm.
 {¶ 2} On December 15, 2005, Defendant was indicted for one count of possession of a firearm in a liquor establishment, a violation of R.C.2923.121(A), a felony of the fifth degree; one count of criminal damaging, a violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree; one count of having a weapon under disability with a firearm specification, a violation of R.C. 2923.13, a felony of the third degree; and one count of criminal trespass, a violation of R.C.2911.21(A)(1), a misdemeanor of the fourth degree. Each of the charges arose *Page 2 
from Defendant's entering a bar and discharging a firearm. On December 13, 2005, a Lorain County jury convicted Defendant on all four counts and specifications. Defendant was sentenced on March 13, 2006, to an aggregate term of six years in prison. Defendant timely appeals his conviction, raising three assignments of error for review.
 Assignment of Error I "The conviction of [Defendant] was against the manifest weight of the evidence."
 Assignment of Error III "[Defendant's] conviction was supported by insufficient evidence."
 {¶ 3} Defendant asserts that this conviction was against the manifest weight of the evidence and was not supported by sufficient evidence because the only witness to identify Defendant as the perpetrator was not credible. The witness (Shalicia Gilbert) was a convicted felon who did not name Defendant as the perpetrator until 14 months after the crime. She further did not precisely describe the gun because she did not see it up close or see Defendant fire the gun.
 {¶ 4} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. See id., at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith (1997),80 Ohio St.3d 89, 113. The difference, in the simplest sense, is that *Page 3 
sufficiency tests the burden of production while manifest weight tests the burden of persuasion. Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 5} Sufficiency is a question of law. Thompkins,78 Ohio St.3d at 386; Smith, 80 Ohio St.3d at 113. If the State's evidence was insufficient as a matter of law, then on appeal, a majority of the panel may reverse the trial court. Thompkins, 78 Ohio St.3d. at paragraph three of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy. Id. at 387, citing Tibbs v.Florida (1982), 457 U.S. 31, 47. In such instance, the State would have failed on its burden of production, and as a matter of due process, the issue should not even have been presented to the jury. Id. at 386;Smith, 80 Ohio St.3d at 113.
 {¶ 6} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether the evidence produced satisfies each of the elements of the crime. See State v. Getsy (1998), 84 Ohio St.3d 180, 193. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. This standard requires no exhaustive review of the record, no comparative weighing of competing evidence, and no *Page 4 
speculation as to the credibility of any witnesses. Instead, the appellate court "view[s] the evidence in a light most favorable to the prosecution." Jenks at paragraph two of the syllabus. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 7} Manifest weight is a question of fact. Thompkins,78 Ohio St.3d at 387. If the trial court's judgment was against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. In the special case of a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Const. Because reversal on manifest weight grounds is not a question of law, it is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citing Tibbs at 41-43. Under this construct, the appellate panel "sits as the `thirteenth juror' and disagrees with the fact-finder's resolution of the conflicting testimony," finding that the State has failed its burden of persuasion. See Thompkins, 78 Ohio St.3d at 387.
 {¶ 8} In a manifest weight analysis, an appellate court essentially undertakes a three-step, sequential inquiry: (1) whether the State's account was believable based upon the evidence; (2) and if so, whether it was more believable than the defendant's version of the evidence; (3) but if not, whether the State's case was so unbelievable or unpersuasive as to undermine the integrity of the *Page 5 
jury's finding of guilt and cause one to question whether justice was done. See Getsy, 84 Ohio St.3d at 193. Obviously, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin,148 Ohio App.3d 293, 2002-Ohio-3410, ¶ 26, quoting State v. Hayden (Dec. 2, 1999), 9th Dist. No. 19094, at 14.
 {¶ 9} In step (1) an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses[,] and * * * resolve[s] conflicts in the evidence." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Step (2) "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Internal quotations and emphasis omitted.) Smith, 80 Ohio St.3d at 113. "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis omitted.) Thompkins, 78 Ohio St.3d at 387. And in completing step (2), "[a] court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring).
 {¶ 10} However, step (3) dictates that an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387 (Emphasis added). See, also, id at *Page 6 
390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. In application, this may be stated as "[a court] will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v.Lee, 158 Ohio App.3d 129, 2004-Ohio-3946, ¶ 15.
 {¶ 11} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins, 78 Ohio St.3d at 388. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Lee at ¶ 18. AccordUrbin at ¶ 3 1. In the present case, manifest weight is dispositive.
 {¶ 12} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State, specifically the identification testimony of Ms. Gilbert.
 {¶ 13} Defendant was convicted of four crimes (with specifications). The elements of each are as follows.
1 Possession of a Firearm in a Liquor Establishment (R.C.2923.121(A)): *Page 7 
 "(A) No Person shall possess a firearm in any room in which liquor is being dispensed in premises for which a D permit has been issued under Chapter 4303 of the Revised Code."
2. Criminal Trespassing (R.C. 2911.21(A)(1)):
 "(A) No person, without privilege to do so, shall * * * (1) Knowingly enter or remain on the land or premises of another[.]"
3. Criminal Damaging (R.C. 2909.06(A)(1)):
 "(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) Knowingly, by any means[.]"
4. Having a Weapon While Under Disability (R.C. 2923.13(A)(2)):
 "(A) Unless relieved from disability[1] as provided in section 2923.14 of the Revised Code, no person shall knowingly acquired, had, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."
 {¶ 14} The jury heard testimony from four witnesses, all produced by the State: Joan Bahnsen (the bar owner), Douglas Smith (the responding officer), Shalicia Gilbert (the bartender/witness) and Stephen Curry (the investigating officer). *Page 8 
 {¶ 15} Ms. Bahnsen testified that the bar (the Highland Bar and Grille, hereinafter the "bar") served beer, wine and liquor and maintained a D5 liquor license. The liquor license was entered into evidence as State's Exhibit 13. Bahnsen testified that there were two signs posted on the premises prohibiting firearms in her establishment. On the night in question, Bahnsen was upstairs in her apartment above the bar and did not see any of the events. She called the police after she heard a popping noise and Ms. Gilbert appeared in the apartment. Bahnsen identified pictures of the bullet holes at the bar and testified that these holes were created by the shooting at issue. Finally, Bahnsen acknowledged that the neighborhood in which her bar is located is a rough one but indicated that there had been no previous shootings in her bar.
 {¶ 16} Officer Smith, a 16-year veteran of the Lorain County Police Department responded to Ms. Bahnsen's call on the night in question at approximately 12:30 a.m. Upon his arrival, there were 10 — 12 people in the bar drinking and playing pool. Nobody would tell him what happened. Smith testified that witnesses in this type of situation are often uncooperative and reluctant to speak with the police. He first encountered Ms. Gilbert in the back room of the bar as she was coming downstairs from the apartment. From his discussion with Ms. Gilbert, he learned that a patron had been swearing and cursing in the bar and Ms. Gilbert had tried to get him to calm down, but ultimately threw him out. *Page 9 
 {¶ 17} Smith investigated the scene and noted a bullet hole through the bar and into the beer cooler behind the bar. A bullet casing was found inside the beer cooler. The casing was consistent with either a handgun or a rifle. Other damage included a beer can that had been punctured and was leaking into the bottom of the cooler and a couple of broken glasses. Smith did not conduct any tests on the scene to determine if the bullet had been recently fired because such a test could not be conducted at a crime scene. Based on his full investigation, he determined there had been a shooting at the bar that night.
 {¶ 18} Finally, Smith acknowledged that firearms are prohibited in any liquor establishment, including the Highland Bar and Grille and that had a patron entered the bar with a firearm while he was present, that patron would have likely been arrested.
 {¶ 19} Ms. Gilbert was the bartender at the Highland Bar and Grille on the night in question. Besides tending bar, Gilbert also maintained order in the bar.
 {¶ 20} On the night in question Defendant came into the bar. Gilbert knew Defendant from the neighborhood and indicated that they "grew up like family." Defendant had been drinking when he arrived. Defendant started arguing loudly with his girlfriend. Gilbert told Defendant to calm down and when he would not, she told him to leave the bar, which he did. Thirty minutes later, he returned to the bar carrying a long barrel gun. Gilbert was standing at the end of the bar and *Page 10 
when she saw the gun, she ran upstairs. Shortly after she got to the top of the stairs, she heard a gun shot.
 {¶ 21} After the police arrived, she went back downstairs and noticed a bullet hole in the bar, broken glasses and a bullet hole through the freezer. The damage was not there prior to the shooting. The police came a few days later and took pictures of the bullet holes. Gilbert identified State Exhibit 2, a photograph of a bullet hole.
 {¶ 22} Gilbert also testified that she had been approached by the Defendant at the courthouse during the trial, prior to her testimony. Gilbert indicated that she told Defendant she did not want him to go to jail because he was like family and Defendant tried to tell her how to testify. He said, "all you got to do is say no and it's all over."
 {¶ 23} Gilbert met with the prosecutor twice before trial. They sat down to talk once at the prosecutor's office the week prior to trial. Defendant's lawyer was present during the entire interview. The prosecutor told her during the interview that her only obligation was to tell the truth.
 {¶ 24} Gilbert has a prior felony conviction for trafficking in cocaine, but denied that she has ever violated her probation. She also had a DUI conviction while on probation, for which she served 13 days in jail. Gilbert denied that the State threatened her with a probation violation if she did not testify at trial against Defendant. This testimony was confirmed by Detective Curry. *Page 11 
 {¶ 25} On cross-examination, Gilbert denied that she told the defense attorney that she did not know the perpetrator's name. Gilbert testified that she always knew the perpetrator was the Defendant but that she was not the person who first gave the police his name because Defendant was like family. Other people in the bar gave the police Defendant's name. She did talk to the police about "Telly," Defendant's nickname, shortly after the incident when the police brought up the name. Gilbert testified that she only testified at trial because she was subpoenaed. Gilbert acknowledged she had never been shown a photo array.
 {¶ 26} Detective Curry, a 14-year veteran of the Lorain County Police Department, was the investigating officer. He was a detective in the criminal investigation unit and has investigated many serious murder cases. He began investigating the incident at issue three days after the crime and took the pictures that were marked as State's Exhibits 1, 2, 3, 4, 8, and 10.
 {¶ 27} Curry first brought up the name of Telly to Gilbert as a possible suspect. Gilbert knew who he was and told him how she knew him. The police had already spoken to other witnesses in the bar that night. A photo lineup would not have been appropriate in a case like this because the identifying witness knew the perpetrator. Curry explained that photo arrays are not used where identification is not an issue. Curry further testified that no promises were made to Ms. Gilbert to encourage her to testify. *Page 12 
 {¶ 28} Curry was a witness to part of the conversation between Gilbert and the Defendant at the courthouse during trial. He approached the pair because he was afraid Defendant was intimidating a witness. He heard Defendant tell Gilbert to "just say no and it will all be over."
 {¶ 29} At the time of his arrest, Defendant was given an opportunity to talk to the police.
 {¶ 30} Defendant's primary argument on appeal is that the State's testimony, particularly that of Ms. Gilbert (the only eyewitness to testify), was inconsistent and simply not worthy of belief because she was a convicted felon and had not given Defendant's full name until the day of trial. This was a point worth arguing to the jury, who was obligated to assess the evidence critically, under the strict "beyond a reasonable doubt" standard. Defense counsel made such an argument. However, on appeal, this Court assesses the evidence liberally, considering whether "the evidence weighs [so] heavily against the conviction" that the necessary conclusion is that "the jury clearly lost its way and created * * * a manifest miscarriage of justice."Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175.
 {¶ 31} Based on our review of the entire record, we conclude that Defendant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. There was competent, credible evidence that Defendant was the perpetrator. "The weight to *Page 13 
be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." DeHass, 10 Ohio St.2d at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses. In this case the jury believed Ms. Gilbert's and the other state's witnesses' testimony. We find it reasonable that the jury believed the State's version of the events, disbelieved the defense's theory and convicted him accordingly. We conclude that the conviction is not against the manifest weight of the evidence.
 {¶ 32} As this Court has disposed of Defendant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Lee at ¶ 18. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Defendant's first and third assignments of error are overruled.
 Assignment of Error II "[Defendant's] constitutional right to a fair trial under the United States and Ohio Constitutions were prejudicially affected by prosecutorial misconduct."
 {¶ 33} In his first assignment of error, Defendant asserts that he was denied the right to a fair trial when the prosecutor told the jury during closing argument that the Defendant has the "burden of the whole truth." Defendant asserts that this statement improperly imposes a burden on the Defendant and impliedly uses the Defendant's decision not to testify against him. We disagree. *Page 14 
 {¶ 34} "`The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v.Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, at ¶ 62, quoting State v.Smith (1984), 14 Ohio St.3d 13, 14. Generally, a prosecutor is allowed wide latitude in the closing argument to present his most convincing positions to the jury, and "[t]he jury should be given credit for sufficient common sense and sound judgment" to weigh the prosecutor's words appropriately. State v. Woodards (1966), 6 Ohio St.2d 14, 26; see, also, State v. Smith, 9th Dist. Nos. 01CA0039, 01CA0055, 2002-Ohio-4402, at ¶ 96. "Significantly, prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial."Smith, 2002-Ohio-4402 at ¶ 96, citing State v. Maurer (1984),15 Ohio St.3d 239, 266. Defendant must demonstrate that "but for the prosecutor's misconduct, the result of the proceeding would have been different." State v. Burgos, 9th Dist. No. 05CA008808, 2006-Ohio-4305, at ¶ 39, citing State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47.
 {¶ 35} Defendant objects to the following prosecutor's statement made in closing argument: "[T]hey [Defendant and defense counsel] have a burden of truth. And a burden of the whole truth." Defendant objected to this statement at trial, which the trial court overruled. Defendant contends that this statement amounts to a comment on his decision not to testify, and that his Fifth Amendment rights were therefore violated. While it is true that a prosecutor may not comment *Page 15 
on a defendant's refusal to testify, "isolated remarks by a prosecutor should not be taken out of context and given their most damaging interpretation." Smith, 2002-Ohio-4402 at ¶ 98, citing State v.Twyford (2002), 94 Ohio St.3d 340, 356. "In determining whether a defendant's Fifth Amendment rights were violated, this court must consider `whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" (Internal citations omitted.) Smith, 2002-Ohio-4402 at ¶ 98, quotingTwyford, 94 Ohio St.3d at 355.
 {¶ 36} We find that the prosecutor's comments in this case would not lead the jury to conclude that the prosecutor was commenting on Defendant's failure to testify. The prosecutor could have made the statements regardless of Defendant's decision to testify, since the statement did not implicitly or explicitly reference Defendant's refusal to testify. See Smith, 2002-Ohio-4402, at ¶ 99. The prosecutor's reference to Defendant's burden of truth was not misleading to the jury as to the proper allocation of the burden of proof because of the context in which it was stated. Immediately prior to making the statement at issue, the prosecutor stated that Defendant "has no burden of proof."
 {¶ 37} The Court notes that, although the prosecutor's phrase would not have misled the jury in this case, if the situation were slightly different, it easily could do so. It is a dangerous phrase, and the prosecutor would be well advised to avoid it. *Page 16 
 {¶ 38} Finally, "the trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments are not evidence. We presume that the jury followed the court's instructions." State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, at ¶ 157, citing State v. Loza (1994), 71 Ohio St.3d 61,79. The trial court further instructed the jury that the Defendant had a constitutional right not to testify and that Defendant's decision not testify must not be considered for any purpose in determining Defendant's guilt or innocence. As stated above, the jury is presumed to follow instructions given by the court. Pang v. Minch (1990),53 Ohio St.3d 186, paragraph four of the syllabus.
 {¶ 39} Based on the foregoing, we find that the prosecutor's statement did not deprive Defendant of a fair trial. Defendant's second assignment of error is overruled.
 {¶ 40} Both of Defendant's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into *Page 17 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
CARR, J. DICKINSON, J. CONCURS
[1] The parties stipulated that Defendant had not relieved himself from disability. Accordingly, as to the charge of Having a Weapon Under Disability charge, the State only had to prove that Defendant had, carried or used a firearm. *Page 1