DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Ian Recklaw told a police detective that he had sexual intercourse with B.M., his ex-girlfriend's 13-year-old sister. The Grand Jury indicted him for rape, unlawful sexual conduct, and gross sexual imposition, and he was convicted of unlawful sexual conduct. This Court affirms because the trial court correctly allowed Mr. Recklaw's confession into evidence, because there was sufficient evidence to convict him of unlawful sexual conduct, and because his conviction was not against the manifest weight of the evidence.
 FACTS {¶ 2} Mr. Recklaw has a child with B.M.'s older sister. Because neither of them was able to care for the child, B.M.'s mother obtained custody. To facilitate Mr. Recklaw's visits with the child, B.M.'s mother regularly let him spend the night at her family's house. During *Page 2 
one of those visits in July 2007, Mr. Recklaw spent the evening watching a movie with B.M. and her family.
 {¶ 3} After the movie was over, B.M.'s parents went upstairs to bed. Mr. Recklaw and B.M. remained in the living room watching television. After a couple of hours, Mr. Recklaw and B.M. decided to play truth or dare. After awhile, Mr. Recklaw got tired of the game. He threw B.M. on the couch and began undressing her, telling her that, if she said anything, he would kill the child he had with B.M.'s sister. While he was undressing her, however, her grandfather returned home, causing him to stop.
 {¶ 4} Because the grandfather entered the house through a side door, he did not notice Mr. Recklaw and B.M. in the living room. After he went upstairs, Mr. Recklaw continued undressing B.M. and had sexual intercourse with her. When it was over, B.M. went upstairs and told her mother that she thought she might be pregnant. B.M.'s father called the police, who arrested Mr. Recklaw.
 {¶ 5} The police took Mr. Recklaw to the police station, where he denied that he had engaged in sexual activity with B.M. After a detective interrogated him for awhile, Mr. Recklaw requested an attorney. The detective immediately stopped questioning Mr. Recklaw and left the room. After 15 to 20 minutes, Mr. Recklaw asked to use the bathroom. While Mr. Recklaw was in the bathroom, he asked the detective what would happen next. The detective told him that he had to talk to the prosecutor to see what charges to issue. Mr. Recklaw then told the detective that he had made a mistake and wanted to talk about what had happened. The detective told Mr. Recklaw that, because he had requested an attorney, he could not talk to him. Mr. Recklaw insisted on restarting the interview, however, so the detective took him back to the interrogation *Page 3 
room, reread him Miranda warnings, and continued questioning him. Mr. Recklaw then admitted having sexual intercourse with B.M.
 {¶ 6} Meanwhile, the police transported B.M. to the hospital where she was examined and interviewed. The police obtained Mr. Recklaw's clothing, which were examined for DNA evidence. B.M.'s DNA was found on Mr. Recklaw's boxer shorts.
 {¶ 7} The Grand Jury indicted Mr. Recklaw for rape, unlawful sexual conduct, and gross sexual imposition. Mr. Recklaw moved to suppress the recording of his interview with the detective, which the trial court denied. A jury convicted him of unlawful sexual conduct, and the court sentenced him to three years in prison. Mr. Recklaw has appealed his conviction, assigning two errors.
 MOTION TO SUPPRESS {¶ 8} Mr. Recklaw's first assignment of error is that the trial court incorrectly denied his motion to suppress the statements he made during the police interview. He has argued that his statements were elicited in violation of his Fifth Amendment right against self-incrimination and his Fifth and Sixth Amendment rights to counsel.
 {¶ 9} A motion to suppress evidence presents a mixed question of law and fact. State v. Burnside, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. A reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., but seeState v. Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."Burnside, 2003-Ohio-5372, at *Page 4 
 {¶ 10} Regarding Mr. Recklaw's argument under the Sixth Amendment, "[t]he Sixth Amendment right to counsel does not attach until after the initiation of formal charges." State v. Williams, 99 Ohio St. 3d 439,2003-Ohio-4164, at ¶ 31 (quoting Moran v. Burbine, 475 U.S. 412, 431
(1986)). Because Mr. Recklaw had not been charged at the time he spoke with the detective, his Sixth Amendment right to counsel had not attached. Accordingly, it was not violated.
 {¶ 11} Regarding Mr. Recklaw's argument under the Fifth Amendment, the Ohio Supreme Court has held that, once a defendant has asserted his Fifth Amendment right to counsel, no further interrogation is permitted unless the defendant himself initiated "further communication, exchanges, or conversations with the police." State v. Gapen,104 Ohio St. 3d 358, 2004-Ohio-6548, at ¶ 51 (quoting Edwards v. Arizona,451 U.S. 477, 485 (1981)). "[T]he burden [is] upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." Oregon v.Bradshaw, 462 U.S. 1039, 1044 (1983). "Such a waiver must be knowing and intelligent and found to be so under the `totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.'" Gapen, 104 Ohio St. 3d at 367
(quoting Edwards, 451 U.S. at 486). The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards, 49 Ohio St. 2d 31, paragraph two of the syllabus (1976), overruled on other grounds by Edwards v.Ohio, 438 U.S. 911 (1978). "A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey,53 Ohio St. 3d 88, 91 (1990). *Page 5 
 {¶ 12} Mr. Recklaw has argued that he did not voluntarily waive his right to counsel because, after he invoked his right, the police left him handcuffed to the interrogation table and took no steps to provide him with a lawyer or a telephone so that he could contact a lawyer himself. The detective who interviewed Mr. Recklaw testified that, after Mr. Recklaw requested an attorney, he left the room and called the hospital to determine whether anything had been found during B.M.'s physical examination. Mr. Recklaw remained in the interrogation room by himself for about 15 or 20 minutes until he asked to use the restroom. While he and the detective were in the restroom, Mr. Recklaw said that he wanted to continue talking. Only 27 minutes passed between the end of the first interview and the start of the second. The detective admitted that he did not do anything to find Mr. Recklaw a lawyer. He said that a person under investigation is either charged and appointed a lawyer by the court or released and may retain a lawyer on their own. His department is never involved in securing a lawyer for a criminal defendant.
 {¶ 13} Only 15 to 20 minutes passed between the time Mr. Recklaw invoked his right to counsel and the time he told police that he wanted to continue talking. Although Mr. Recklaw was alone in a room and handcuffed to a table during that time, there is no evidence that he suffered any physical deprivation or mistreatment. There is also no evidence that he requested a telephone so that he could call a lawyer. Under the totality of the circumstances, this Court concludes that Mr. Recklaw's waiver of his right to counsel was knowing and voluntary. The trial court, therefore, properly denied his motion to suppress. His first assignment of error is overruled. *Page 6 
 SUFFICIENCY {¶ 14} Mr. Recklaw's second assignment of error is that there was insufficient evidence to convict him of unlawful sexual conduct, and that his conviction is against the manifest weight of the evidence. "Inasmuch as a court cannot weigh the evidence unless there is evidence to weigh," this Court will first consider his argument that his conviction is not supported by sufficient evidence. Whitaker v. M.T.Automotive Inc., 9th Dist. No. 21836, 2007-Ohio-7057, at ¶ 13.
 {¶ 15} Section 2907.04(A) of the Ohio Revised Code provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another . . . when the offender knows the other person is thirteen years of age or older but less than sixteen years of age. . . ." Mr. Recklaw has argued that "the record is void of any proof that [he] had sexual contact with [B.M.]" He has noted that, although B.M.'s DNA was found on the front panel of his underwear, its source is unknown. He has also noted that the prosecution's expert testified that the DNA was probably from some sort of skin cell.
 {¶ 16} Multiple witnesses testified that, because of Mr. Recklaw's extensive contact with B.M.'s family, he would have known that she was only 13 years old in July 2007. B.M. testified that Mr. Recklaw threw her on a couch, took her pants and underwear off, and had sexual intercourse with her. The detective who interviewed Mr. Recklaw testified that he said he became "very turned on" playing truth or dare and that he and B.M. "ended up having sexual intercourse." The State submitted a recording of the interview in support of the detective's testimony. In light of B.M.'s testimony and Mr. Recklaw's admission that he had sex with B.M., this Court concludes there was sufficient evidence to establish that he engaged in sexual conduct *Page 7 
with a person that he knew was 13 years old. To the extent Mr. Recklaw's second assignment of error is that his conviction is not supported by sufficient evidence, it is overruled.
 MANIFEST WEIGHT {¶ 17} Mr. Recklaw has also argued that his conviction was against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 18} The jury heard Mr. Recklaw admit that he had sexual intercourse with B.M and had the opportunity to assess the credibility of B.M., who said the same thing. Although the police did not recover Mr. Recklaw's semen or any other source of his DNA from B.M. and her physical attributes were "perfectly normal," the police did find B.M.'s DNA on Mr. Recklaw's underwear. They also found his semen on his shirt, which was consistent with his statement to the detective that he ejaculated onto the shirt he was wearing after they finished having sex. Having reviewed and weighed all the evidence that was before the trial court, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice when it found that Mr. Recklaw had sexual intercourse with a 13-year-old girl. To the extent his second assignment of error is that his conviction is against the manifest weight of the evidence, it is overruled.
 CONCLUSION {¶ 19} Because Mr. Recklaw initiated further conversation with the police after invoking his right to counsel, the trial court correctly denied his motion to suppress. There is sufficient *Page 8 
evidence in the record to support his conviction for unlawful sexual conduct, and his conviction was not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, P. J. WHITMORE, J. CONCUR *Page 1