[Cite as *State v. Frum*, 2013-Ohio-1096.]

STATE OF OHIO     )     IN THE COURT OF APPEALS
            )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE   )

STATE OF OHIO          C.A. No.   12CA0039

   Appellee

   v.             APPEAL FROM JUDGMENT
                ENTERED IN THE
ROBERT W. FRUM       WAYNE COUNTY MUNICIPAL COURT
                COUNTY OF WAYNE, OHIO
   Appellant        CASE No.  TRD-12-05-04569

DECISION AND JOURNAL ENTRY

Dated: March 25, 2013

BELFANCE, Presiding Judge.

**{¶1}** Defendant-Appellant Robert Frum appeals from his conviction in the Wayne County Municipal Court. For the reasons set forth below, we reverse.

I.

**{¶2}** On May 18, 2012, Mr. Frum worked for J & J Refuse and was responsible for both driving a garbage truck and picking up trash in Orrville. The garbage truck that Mr. Frum drove was only equipped with a left-side steering wheel such that he had to exit the truck on the traffic side of the road every time he stopped. Around 7:00 a.m. that day, Mr. Frum was proceeding east down Back Massillon Road to collect trash after having just finished doing so on Heartland Avenue. At approximately the fifth stop on Back Massillon Road, and after Mr. Frum exited the garbage truck and closed the door, he was struck by a car driven by Brandon Stark.

**{¶3}** Police were called to the scene, and Mr. Frum was cited for opening his door into oncoming traffic in violation of Orrville Codified Ordinance 351.08. Mr. Frum pleaded not

guilty to the charge, and a bench trial ensued. The judge found Mr. Frum guilty of the violation and fined him. Mr. Frum appeals, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE VERDICT OF THE WAYNE COUNTY MUNICIPAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶4}** Mr. Frum asserts in his sole assignment of error that the trial court's finding of guilty is against the manifest weight of the evidence. Nonetheless, a review of the weight of the evidence necessarily involves an evaluation of the sufficiency of the evidence in that, in order for this Court to weigh the evidence, there must be evidence to weigh. *See State v. Recklaw*, 9th Dist. No. 24078, 2008-Ohio-5444, ¶ 14; *see also State Anderson,* 9th Dist. No. 26006, 2012-Ohio-3663, ¶ 5; *State v. Eikleberry,* 184 Ohio App.3d 219, 2009-Ohio-3648, ¶ 15 (9th Dist.); *Estate of Harrold v. Collier,* 9th Dist. Nos. 07CA0074, 08CA0024, 2009-Ohio-2782, ¶ 15-16; *see also Tibbs v. Florida,* 457 U.S. 31, 42-43 (1982) (noting that "[a] reversal based on the weight of the evidence * * * can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict[]"). As the dissent points out, this Court has not always addressed sufficiency of the evidence on appeal, even in cases where it has been raised. *See State v. Horne*, 9th Dist. No. 24672, 2010-Ohio-350, ¶ 7. However, the dissent points to nothing that would prevent us from sua sponte doing so when it is obvious on the face of the record that the conviction is based upon insufficient evidence. To uphold such a conviction would violate a defendant's due process rights. *See State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997) ("[A] conviction based on legally insufficient evidence constitutes a denial of due process."); *see also Jackson v. Virginia,* 443 U.S. 307, 314 (1979) ("[A] conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged

is constitutionally infirm."). As it is clear from the face of the record before us that Mr. Frum's conviction is based upon insufficient evidence, we conclude we are obligated to reverse it.

{¶5} In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6} O.C.O. 351.08 provides that "[n]o person shall open the door of a vehicle on the side available to moving traffic unless and until it is reasonably safe to do so, and can be done without interfering with the movement of other traffic, * * * ." O.C.O. 351.08 mirrors R.C. 4511.70(C).

{¶7} Mr. Stark and Officer Ryan Pitchure testified for the State, and Mr. Frum testified in his own defense. Mr. Stark indicated that, on the morning of May 18, 2012, he was on his way to work and turned onto Back Massillon Road behind Mr. Frum's garbage truck. Prior to turning onto Back Massillon Road, Mr. Stark observed Mr. Frum in his bright colored vest walking across the street and making stops. As Mr. Stark pulled up behind the garbage truck, Mr. Frum was coming to a stop. Mr. Stark slowed down as he approached the garbage truck and then sped up to 20-25 miles per hour to pass the garbage truck. The posted speed limit was 35 miles per hour. Mr. Stark did not honk his horn as he was attempting to pass it. As Mr. Stark was passing the garbage truck, Mr. Frum hopped out of the truck, and Mr. Stark's vehicle

collided with Mr. Frum. Mr. Stark did not hit the garbage truck door or any other part of the garbage truck. Mr. Stark testified that he was not even sure if the garbage truck had doors. Mr. Starks' vehicle suffered damage to its ride side; the right side of the windshield was broken, the right side mirror was torn off of the car, and a substantial portion of paint was removed from the area above the right front wheel.

{¶8} Officer Pitchure with the City of Orrville Police Department testified that Mr. Stark told him that Mr. Stark waited for oncoming traffic to pass and then proceeded to pass the garbage truck. As he was doing so, Mr. Frum exited the truck, and the collision occurred. Mr. Frum told Officer Pitchure that, as he was exiting the garbage truck, he looked back, did not see any vehicles, exited, and the next thing he knew he was struck by a car. Officer Pitchure did not observe any damage to the garbage truck but did observe the damage to Mr. Stark's vehicle. Ultimately, police took a crash report and only issued Mr. Frum a citation.

{¶9} Mr. Frum testified that, on the date of the collision, he was working alone, both operating the garbage truck and collecting the trash. The garbage truck that Mr. Frum drove was only equipped with a left-side steering wheel such that he had to exit the truck on the traffic side of the road every time he stopped. He had started work at 5 a.m. and had finished collecting trash on Heartland Avenue around 7 a.m. He then turned onto Back Massillon Road heading east. At approximately the fifth stop on Back Massillon Road, and after Mr. Frum exited the garbage truck and closed the door, he was struck by the car driven by Mr. Stark. In describing the crash, Mr. Frum stated that,

> I [went] ahead to start to get out and as I[ was] getting out, I look[ed] behind me, [Mr. Stark] [wa]s still behind me, he look[ed] like he[ was] slowing down so I[ was] like okay, he is going to stop. * * * So when I [took] my step off I turn[ed] to the left, I close[d] the door to make sure no more traffic [wa]s coming to me and as I[ was] taking my step, he hits me[.]

{¶10} He reaffirmed that, at the time of the crash, he had already exited the vehicle and closed the door. Mr. Frum also testified that, at the time he exited the truck, he felt it was reasonably safe to do.

{¶11} Even when viewing the record in a light most favorable to the State, we cannot conclude that it met its burden. There was no evidence that the action of Mr. Frum opening the door interfered with the movement of traffic or was done at a point in time when it was not reasonable to do so. There was no evidence that Mr. Frum's door played any role in causing the collision. Mr. Frum testified that he stepped down from the truck, closed the door, and then was hit by Mr. Stark's vehicle. There is nothing in the record that contradicts his testimony on this point. Mr. Stark was asked whether Mr. Frum was using a door to get in and out of the garage truck, and Mr. Stark responded that he did not believe so and stated that he did not recall whether he saw a door on the garbage truck. Further, there was no evidence that the garbage truck was damaged in any way. It is undisputed that Mr. Stark hit Mr. Frum with Mr. Stark's vehicle. Mr. Stark did not hit Mr. Frum's door or any portion of Mr. Frum's garbage truck.

{¶12} The plain language of the ordinance appears to be designed to prohibit activity by individuals that would lead to accidents caused by the individuals opening their doors into traffic. O.C.O. 351.08. There is nothing in the ordinance to suggest that it was intended to prohibit the conduct that took place in the instant matter. While Mr. Frum's actions may have violated another ordinance, the State did not establish that Mr. Frum violated O.C.O. 351.08. The evidence establishes that Mr. Frum was able to open and close his door without incident, leading to the conclusion that Mr. Frum opened his door into traffic at a time when it was reasonably safe to do and that the act did not interfere with traffic. Accordingly, we reverse Mr. Frum's conviction, and the matter is remanded for the court to enter a judgment of acquittal.

III.

{¶13} In light of the foregoing, we reverse the judgment of the Wayne County Municipal Court.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS.

WHITMORE, J.
DISSENTING.

{¶14} I respectfully dissent. Based upon the record on appeal, I would conclude that Frum's conviction is not against the manifest weight of the evidence and affirm the judgment of the trial court.

{¶15} I do not agree with the majority's decision to conduct a sufficiency analysis when Frum's sole argument is that his conviction is against the manifest weight of the evidence. The majority cites *State v. Recklaw*, 9th Dist. No. 24078, 2008-Ohio-5444, and several other cases for the proposition that, in order for this Court to weigh evidence, it first must determine that there is evidence to weigh. The statement of law from *Recklaw* upon which the majority relies is that "a court cannot weigh the evidence unless there is evidence to weigh." *Recklaw* at ¶ 14, quoting *Whitaker v. M.T. Automotive Inc.*, 9th Dist. No. 21836, 2007-Ohio-7057, ¶ 13. *Recklaw*, however, was a case in which the appellant raised both sufficiency and weight as assignments of error. Moreover, the cases upon which the abovementioned quote in *Recklaw* is based, *Whitaker* and *Chicago Ornamental Iron Co. v. Rook*, 93 Ohio St. 152 (1915), are also inapplicable to the case at hand because they both contained challenges to sufficiency and weight. *See also State v. Anderson*, 9th Dist. No. 26006, 2012-Ohio-3663, ¶ 5 (relying upon *Recklaw* to reach sufficiency); *State v. Eikleberry*, 184 Ohio App.3d 219, 2009-Ohio-3648, ¶ 15 (9th Dist.) (relying upon *Whitaker* to reach sufficiency); *Estate of Harrold v. Collier*, 9th Dist. Nos. 07CA0074 & 08CA0024, 2009-Ohio-2782, ¶ 16 (9th Dist.) (relying upon *Whitaker* to reach sufficiency).

{¶16} This Court has written in several cases that "although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence

necessarily includes a finding of sufficiency." *E.g., State v. Johnson*, 9th Dist. No. 06CA008911, 2007-Ohio-1480, ¶ 11. As was the case in *Recklaw*, however, all of the cases containing the foregoing language involved both sufficiency and weight arguments. *See, e.g., id.*; *State v. Brooks*, 9th Dist. No. 23236, 2007-Ohio-506; *State v. Owens*, 9th Dist. No. 23267, 2007-Ohio-49. "[W]eight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In constructing his argument on appeal, Frum chose to only present a weight challenge. Because he limited his argument to weight, one could infer that Frum chose to concede the sufficiency of the evidence and focus solely on seeking a reversal on the weight of the evidence. *See id.* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982) ("A reversal based on the weight of the evidence * * * can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.").

**{¶17}** It would appear that what the majority actually seeks to do is to perform a sua sponte review of Frum's conviction for sufficiency under the theory that it would be plain error for a conviction based on insufficient evidence to stand. *See State v. Davis*, 8th Dist. No. 91943, 2009-Ohio-3894, ¶ 34-40. The result of such an analysis is that the State is deprived of any opportunity to respond to an analysis that (1) was never asserted in the defendant's brief, and (2) might result in the loss of a conviction for the State, as it has in this case. Moreover, it is difficult to predict when such an analysis might be applied. In a fairly recent case, this Court wrote:

> Although he assigns error to the sufficiency of the evidence, Horne has failed to adequately present this Court with any argument to support this contention. He has failed to state the standard of review for sufficiency, failed to state the elements of the charges he contends the State failed to prove, and finally, his conclusion to this assignment of error only mentions manifest weight. We decline to create a sufficiency argument for him.

*State v. Horne*, 9th Dist. No. 24672, 2010-Ohio-350, ¶ 7. Thus, this Court has refused to undertake a sufficiency analysis *even when sufficiency has been raised* in an appellant's brief on appeal. In the instant case, the majority has created an entire sufficiency argument for Frum where none exists.

{¶18} In any event, the record here does in fact contain conflicting evidence. Frum testified that he saw a car several hundred feet behind him as he stopped his garbage truck at the fifth house on Back Massillon Road. According to Frum, each time he stopped his truck he would sit in it and wait for a minute before exiting so that he could ensure it was safe to do so. Frum testified that when he pulled up to his fifth stop, he "s[a]t there and wait[ed] a minute," looked behind the truck for traffic, waited for several cars to pass, and then "start[ed] to get out." As he started to get out, Frum testified, he still saw a car behind his truck, but it "look[ed] like [it was] slowing down," so he believed it would stop. Frum then exited the truck, closed the door, made sure no more traffic was coming from the opposite direction, and took a step. At that point, Stark's car struck him.

{¶19} Frum's trial testimony differed from the statement he gave to the police. Officer Ryan Pitchure testified that he interviewed Frum on the day of the accident and that Frum "specifically stated to me he looked back, didn't see any vehicles, he then exited, and the next thing he knew as he got out of the truck he was struck by a vehicle * * *." Thus, Frum did not mention anything to Officer Pitchure about having seen Stark's car. Moreover, he stated that he was struck by a car "*as he got out of the truck*." (Emphasis added.) Frum did not say that he was struck after he got out of the truck, shut the door, and stepped away from it.

{¶20} Stark testified that he had observed Frum's garbage truck make several stops as he prepared to turn onto Back Massillon Road. Stark then turned and began to approach the

truck from behind. Stark testified that he slowed his car as he approached the truck, waited for oncoming traffic to clear, and then accelerated to pass the truck as the truck "was coming to a stop." Stark was clear that Frum was still inside his truck and not on the roadway when he started to pass the truck. Frum then "jumped out" of the truck during Stark's pass. Stark testified that he tried to swerve when he saw Frum jumping out, but he struck Frum with the right side of his car.

{¶21} The majority is incorrect that nothing in the record contradicts Frum's testimony that he stepped down from his truck, closed the door, and then was hit by Stark's car. The record contains conflicting testimony with regard to the point at which Frum exited his truck and whether he saw Stark's car. Stark testified that Frum was still in his truck when Stark began to pass him and that he struck Frum when Frum "jumped out" of his truck during Stark's pass. Frum testified that he waited for a minute after he stopped his truck, stepped out of the truck, shut the door, looked for oncoming traffic, and began to walk before Stark hit him. Thus, according to Frum, his truck had already been stopped and he had already been outside of it for an appreciable amount of time at the point at which Stark's car struck him. Common sense dictates that both versions could not be true. If Frum was still operating the truck when Stark began to pass and then jumped out of it, then he could not have let the truck come to a complete stop for a minute, stepped out of it, shut the door, looked for traffic, and begun to walk. Either he was jumping out of the truck when Stark hit him (Stark's version) or he was starting to walk after already having stopped the truck for a time, gotten out of the truck, shut the door, and looked around (Frum's version). The trial testimony differed. Further, Frum's trial testimony differed from his own statement to Officer Pitchure. Frum told the officer that he never saw

Stark's car and was struck by it "*as he got out of the truck*." (Emphasis added.) Frum's trial testimony contradicted his earlier statement.

{¶22} The majority makes much of the fact that Frum's garbage truck was not damaged in the accident and the fact that Stark did not testify about the garbage truck's door having played a role in the accident. The only definitive testimony Stark gave at trial about the garbage truck door was that he did not recall seeing a door. Yet, the fact that Stark did not recall seeing a door is unsurprising, given the stress of the situation. Stark remembered his shock at Frum jumping out of the truck, his attempt to swerve out of the way, and his hitting Frum with his car. Stark's inability to recall the door does not mean that the door was not open. It is impossible to say exactly how the accident here occurred. For instance, it is possible that the truck and its door were not damaged because Frum's body blocked Stark's car from hitting the door. It is also possible that if Frum "jumped out" of the truck, he jumped far enough for a portion of his body to extend past the open door such that, when combined with Stark's attempt to swerve, only Frum was struck by Stark's car. The fact that the garbage truck was not damaged does not prove anything.

{¶23} The trial court here was presented with competing versions of the events. Stark's version of the events supported the conclusion that Frum did not exit his truck in a reasonably safe manner, as it described Frum coming to a stop as Stark began to pass his truck and exiting the truck as soon as he stopped (when Stark had already begun to pass it). Moreover, Frum himself gave inconsistent versions of the events. The trial court was in the best position to view the evidence and was free to believe Stark's version of the events. *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-

7184, ¶ 35. Frum's conviction is not against the manifest weight of the evidence. Thus, I would overrule Frum's assignment of error and affirm the judgment of the trial court.

APPEARANCES:

ROBERT C. MEYER, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.