[Cite as *State v. Goss*, 2012-Ohio-1951.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97348

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DOUGLAS GOSS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-547141

**BEFORE:** Boyle, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 3, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   David M. King
        Erika B. Cunliffe
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Margaret A. Troia
Assistant County Prosecutor
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

Amey L. Tucker
Gittel Chaiko
Assistant County Prosecutors
9300 Quincy Avenue - 4th Floor
Cleveland, Ohio   44106

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Douglas Goss, appeals his conviction for burglary, claiming that it was against the manifest weight of the evidence. Finding no merit to his appeal, we affirm.

{¶2} Goss was indicted on three counts — burglary, vandalism, and possession of criminal tools. He pleaded not guilty, and the case proceeded to a bench trial. After the state rested, the trial court granted Goss's Crim.R. 29 motion with respect to vandalism, and the state dismissed the possession of criminal tools charge. After Goss rested, the trial court found him guilty of burglary and sentenced him to one year in prison. It also notified him that he would be subject to three years of postrelease control. It is from this judgment that Goss appeals.

## Bench Trial

{¶3} The state presented two witnesses, Kimberly Morris and Officer Timothy Ward. Morris called the police after she heard noises in her father's building when she was visiting it on a Sunday morning in February 2011. When Officer Ward arrived, he also heard the noises, which he said sounded like metal "knocking and banging." Officer Ward entered the basement of the building and found Goss there. Officer Ward

testified that he "searched the building further to see if there was anyone else," but he did not see anyone else.

{¶4} Morris testified that her father owned the building. The first floor of the building, which contained two storefronts, had been boarded up many years before the burglary. Morris's father used the first floor for storage. The second floor, however, contained two apartments, one of which had still been occupied as recently as October 2010. Morris said her cousin had lived in one of the apartments until that time. Morris's cousin still received mail at the property, and had left several belongings there, including a bedroom set, a bicycle, and some clothing. Morris explained that her father intended to rent the apartment that her cousin had lived in once her cousin had removed all of her belongings and they repaired some things.

{¶5} Morris testified that she stopped by the property at least once a week to check on it. She had been there the day before the burglary and removed a ladder that someone had placed in the back to get into the basement. She said that her sister stops by frequently and her cousin stops by several times a week to get her mail.

{¶6} Morris testified that the heat to the building had been turned off when her cousin moved out, but said that they never turned off the electricity. Two days prior to discovering Goss in the building, however, someone had removed the electrical wires to the house.

{¶7} Goss testified on his own behalf. Goss testified that he went to the

building to help his friend who was "squatting" there. Goss said he helped his friend place milk crates near the basement so that he could enter it. Goss testified that his friend had a mattress and candles in the basement. Goss agreed that he did not immediately tell the police about his friend. Goss said that he did not intend to steal anything or do any damage to the building.

Manifest Weight of the Evidence

{¶8}   In his sole assignment of error, Goss argues that his burglary conviction was against the manifest weight of the evidence.

{¶9}   In reviewing a claim challenging the manifest weight of the evidence,

> [t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal quotes and citations omitted.)   *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.

{¶10} Goss was convicted of R.C. 2911.12(A)(3), which   provides that

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

{¶11} "Occupied structure" is defined in part as

> any house, building, * * * or other structure, * * * or any portion thereof, [that] is maintained as a permanent or temporary dwelling, even though it is

temporarily unoccupied and whether or not any person is actually present. R.C. 2901.01(C).

{¶12} In *State v. Green*, 18 Ohio App.3d 69, 480 N.E.2d 1128 (10th Dist.1984), the defendant was convicted of burglary. He argued that the state failed to prove that the home was an occupied structure. The owner of the home had moved out three months prior to the burglary, but returned to the house regularly to remove articles he had left there and to clean it and make repairs. The *Green* court stated:

It is obvious that the General Assembly, in adopting the definition of "occupied structure" found in R.C. 2909.01, intended to broaden the concept of the offense of burglary from one of an offense against the security of habitation, to one concerned with the serious risk of harm created by the actual or likely presence of a person in a structure of any nature. In that context, it is noteworthy that the General Assembly utilized the word "maintained" in division (A), as opposed to "occupied," although it did use that latter word in division (B), which deals with structures other than dwellings. We believe that the distinction between "maintained" and "occupied" is significant, in the sense that the former alludes more to the character or type of use for which the dwelling is intended to be subjected, whereas the latter is more closely related to the actual use to which the structure is presently being subjected.

Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling within the meaning of division (A). In this context, then, division (A) includes a dwelling whose usual occupant is absent on prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all

> these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property — to help "maintain" its character as a dwelling. *Id.* at 71-72.

{¶13} In *State v. Turner*, 8th Dist. No. 86916, 2006-Ohio-4098, this court found that a foreclosed home that the owner had vacated was an "occupied structure." The home went into foreclosure and the owner left sometime in the summer of 2004. In January 2005, the defendant broke into the home. Relying on *Green*, this court explained:

> As noted by the trial court, testimony at trial revealed that the Berkshire Road home was a residential home on a residential street. Although the home was in foreclosure, and the record title holder was not living at the home, there is no evidence that the property had been permanently abandoned. Instead, testimony revealed that the property was under the control of HUD, and that Michaelson, Connor & Boul was actively managing the property for HUD. In addition, Mr. Middleton-Bey testified that both he and other neighbors looked after the house and mowed the grass. Therefore, the testimony at trial was replete with evidence that the residence had not been permanently abandoned, and that neighbors were monitoring the property. As such, the structure could qualify as an occupied structure. *Id.* at ¶ 20.

{¶14} Goss does not challenge this law, or claim that the state failed to present sufficient evidence to prove the elements of burglary beyond a reasonable doubt. Goss contends, however, that the trial court judge, as the trier of fact, lost his way when he determined that Goss entered the building with a criminal intent, and when he found the building to be an occupied structure.

{¶15} In challenging the manifest weight of the evidence regarding these two elements of burglary, Goss questions the credibility of Officer Ward and Morris. He claims Officer Ward's testimony that he searched the entire building "far fetched" and thus, "it was quite plausible that another individual was on the property that day." And he asserts that Morris's testimony "defies logic," contending that the photos that were admitted into evidence "depict a property where it is unlikely that anyone could live [there], let alone recently."

{¶16} This court, however, is mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. The question is whether a new trial is mandated. A new trial is mandated only in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not find this to be the exceptional case.

{¶17} We further conclude that the trial court did not lose its way regarding Goss's criminal intent to enter the building. From the facts of this case, it can be inferred that Goss's purpose in trespassing in the Morris building was to commit a theft offense or a felony. Circumstantial evidence has the same value as direct evidence. *State v. Nicely*,

39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988). Circumstantial evidence was presented that Goss entered the basement of the building by placing milk crates where a basement door used to exist so that he could climb down into it. Moreover, Officer Ward and Morris heard a lot of noise, metallic banging and knocking, creating a reasonable inference that pipes were being removed from the building. The property had already been vandalized many times. In *State v. Flowers*, 16 Ohio App.3d 313, 315, 475 N.E.2d 790 (10th Dist.1984), the court stated, "[T]here is a reasonable inference that one who forcibly enters a dwelling * * * does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference." In this case, it was reasonable for the trial court judge to infer that Goss broke into the building to commit a theft offense, especially considering the metallic banging that Officer Ward and Morris heard.

{¶18} Goss's sole assignment of error is overruled.

{¶19} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR