[Cite as *State v. Braden*, 2014-Ohio-3385.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| STATE OF OHIO, | : | |
| --- | --- | --- |
| Plaintiff-Appellee, | : | CASE NO. CA2013-12-012 |
| | : | O P I N I O N<br>8/4/2014 |
| - vs - | : | |
| | : | |
| RYAN C. BRADEN, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-11147


Martin P. Votel, Preble County Prosecuting Attorney, Kathryn M. West, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Ryan C. Braden, appeals from his conviction in the Preble County Court of Common Pleas for one count of burglary. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On January 7, 2013, a Preble County grand jury returned an indictment

charging Braden with, among other crimes, one count of burglary in violation of R.C. 2911.12(A)(3), a third-degree felony. A bench trial was then held on September 13, 2013, wherein the following evidence was presented to the trial court.

{¶ 3} Henry Dengler owns property located at 4736 Somers-Gratis Road, Preble County, Ohio. The property consists of a farmhouse, two barns and a silo. Although sitting vacant for approximately six months to a year, Dengler would oftentimes rent the property, most recently to one of his employees. However, due to his pending divorce, Dengler testified he was not currently renting the property because his wife "might want to move into this house and wants to keep it open." It is undisputed that Dengler, who owns a total of eight farms in the area, keeps the front door to the house locked at all times, two overhead lights on in the kitchen, and furniture and other personal items in the house. The record also indicates the house has undergone some renovations in order to keep it ready for tenants.

{¶ 4} On the evening of December 19, 2012, Dengler went to check on the property with his employee, David Coronis, after he noticed a tractor had gone missing from the property the day before. Upon arriving at the property, Dengler testified he pulled his truck into the driveway when he saw someone inside the house. Thinking he may have been seeing things, Dengler parked his truck behind the house and shined his headlights directly on the back and side of the home. After briefly surveying the property, Coronis noticed a car parked behind a barn that was completely hidden from view from the road. Finding this odd, Dengler and Coronis got out of the truck to investigate further.

{¶ 5} Once they got out of the truck, Coronis informed Dengler that a man was approaching them from the front of the house. After making contact with the man, who was later identified as Braden, Dengler asked what was going on and why his car was parked on his property. According to Dengler, Braden said "well, the car wouldn't, it was out of gas, and he was waiting on somebody to come and pick him up." Dengler also testified that Braden

told him it was his wife's car, that he had children, and that he was honest. However, when Braden started the car, Dengler testified the car started normally and had approximately a half tank of gas. The record also indicates Braden is not married and that the car was actually owned by Braden's girlfriend, Tyler Kitts.

{¶ 6} Dengler then asked Braden for his identification. Although initially reluctant to produce his driver's license, Braden eventually handed his identification to Dengler, who copied down Braden's pertinent information. Dengler and Coronis then went inside to check on the house. Upon entering the house, Dengler testified he noticed the front door was open, the screen door unlatched, and that a window had been broken. Testimony also revealed the screen around the broken window had been removed. After briefly looking through the house, Dengler and Coronis exited the house, only to find Braden had driven away in the car. Braden was later arrested.

{¶ 7} In his defense, Braden called Kitts, his girlfriend, as well as Jim Nafe, his step-father, both of whom testified that the car had mechanical issues that caused it to turn off sporadically. Nafe also testified that he fixed Kitts' car the day after Braden was discovered on Dengler's property. The car, however, has since been totaled after being involved in an accident. Braden did not present any additional evidence.

{¶ 8} Following the close of all evidence, the trial court found Braden guilty of burglary and sentenced him to serve two years in prison. Braden then filed a motion for a new trial, which the trial court denied. Braden now appeals from his burglary conviction, raising a single assignment of error for review.

{¶ 9} THERE WAS INSUFFICIENT EVIDENCE TO CONVICT BRADEN OF BURGLARY UNDER R.C. 2911.12(A)(3).

{¶ 10} In his single assignment of error, Braden argues the state provided insufficient evidence to support his conviction for burglary in violation of R.C. 2911.12(A)(3). Pursuant to

that statute, no person "by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense."

## Sufficiency of the Evidence Standard of Review

{¶ 11} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

## Braden's Burglary Conviction was Not Based on Improper Stacking of Inferences

{¶ 12} Initially, Braden argues his burglary conviction must be reversed because the trial court relied on "double inferences" in finding him guilty. It is well-established that "[a] trier of fact may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts." *State v. Cooper*, 147 Ohio App.3d 116, 2002-Ohio-617, ¶ 38 (12th Dist.), citing *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 (1999). The rule, however, is extremely limited. *State v. Kalman*, 8th Dist. Cuyahoga

No. 90752, 2009-Ohio-222, ¶ 23.

{¶ 13} For instance, the rule does not prohibit using parallel inferences with additional facts, nor does it "prohibit the drawing of multiple, separate inferences from the same set of facts." *State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶ 27, citing *Donaldson v. N. Trading Co.*, 82 Ohio App.3d 476, 481 (10th Dist.1992) and *McDougall v. Glenn Cartage Co.*, 169 Ohio St. 522 (1959), paragraph two of the syllabus. Rather, "[s]ince reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process, the rule against stacking inferences is limited only to inferences drawn exclusively from other inferences." *Cooper*, citing *State v. Evans*, 10th Dist. Franklin No. 01AP-594, 2001 WL 1653864 (Dec. 27, 2001) and *Donaldson v. N. Trading Co.*, 82 Ohio App.3d 476, 481 (10th Dist.1992).

{¶ 14} After a thorough review of the record, we disagree with Braden's claim that the trial court relied on improper inference stacking to support his burglary conviction. As noted above, the evidence indicates that upon arriving at the property, Dengler noticed someone was inside his house. Braden was then seen walking out from the front of the house towards the parked car he had hidden behind the barn. Although Dengler could not specifically identify Braden as the individual inside the house, no other persons were found on the property. Moreover, upon being confronted by Dengler and Coronis, Braden provided a false story that the car had run out of gas and that he was waiting for someone to pick him up. The car, however, had not run out of gas and was otherwise working properly. None of this evidence requires the improper stacking of inferences.

{¶ 15} The record also contains evidence that Dengler and Coronis discovered forcible entry into the home through a broken window. While Braden claims the state failed to provide any evidence regarding his intent to commit a crime inside the home, "there is a reasonable inference that one who forcibly enters a dwelling does so with the intent to

commit a theft offense in the absence of circumstances giving rise to a different inference." *State v. Goss*, 8th Dist. Cuyahoga No. 97348, 2012-Ohio-1951, ¶ 17, quoting *State v. Flowers*, 16 Ohio App.3d 313, 315 (10th Dist.1984). The state was not required to actually prove Braden committed a theft offense inside the home, but rather, only required to prove Braden committed a trespass with the purpose to commit theft. *State v. Smith*, 10th Dist. Franklin No. 13AP-523, 2014-Ohio-94, ¶ 17, citing *State v. Brooks*, 101 Ohio App.3d 260, 265 (2d Dist.1995). Again, none of this evidence requires the improper stacking of inferences.

{¶ 16} Braden, however, argues this case is similar to *State v. Taylor*, 7th Dist. Jefferson No. 98 JE 31, 2001 WL 118956 (Feb. 9, 2001), a case in which the Seventh District Court of Appeals reversed an attempted burglary conviction upon finding the jury engaged in improper inference stacking. Yet, in that case, the state presented no evidence linking appellant to the crime "other than the fact that he was walking in Toronto at the time that the Toronto Police Department received a call about a possible breaking and entering." *Id.*, 2001 WL 118956 at *4. The Seventh District's decision in *Taylor*, therefore, is clearly distinguishable from the case at bar. As noted above, the state presented ample evidence in this case, albeit circumstantial, that links Braden to the crime. This is true despite the fact that Braden was never found with any of Dengler's property either on his person or within the car. Accordingly, Braden's claim that the state engaged in the improper stacking of inferences to support his burglary conviction is without merit and overruled.

**The House was an "Occupied Structure" as Defined by R.C. 2909.01(C)(1)**

{¶ 17} Next, Braden argues his burglary conviction must be reversed because the house was not an "occupied structure" as defined by R.C. 2909.01(C)(1). Pursuant to 2909.01(C)(1), an "occupied structure" includes any house or building that is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or

not any person is actually present." This includes a "residential rental unit which is temporarily vacant." *State v. Green*, 18 Ohio App.3d 69 (10th Dist.1984), paragraph one of the syllabus.

{¶ 18} In analyzing whether a building is an "occupied structure" under R.C. 2909.01(C)(1), this court has found "the relevant inquiry focuses on the nature for which the building is used, not the length of a temporary absence." *State v. Jackson*, 12th Dist. Butler Nos. CA2005-02-033 and CA2005-03-051, 2006-Ohio-1147, ¶ 34. "The mere fact that a residence has no actual tenant or owner living in it does not establish that the structure is unoccupied within the meaning of the Revised Code." *State v. Johnson*, 188 Ohio App.3d 438, 2010-Ohio-3345, ¶ 20 (2d Dist.).

{¶ 19} As stated previously, Dengler kept two overhead lights on in the kitchen, stored furniture and other personal items in the house, and had the front door to the house locked at all times. In addition, although limited in nature, the house had undergone some renovations, indicating Dengler's intent to maintain the house as residential rental property. The record also contains evidence Dengler had not rented the property at that time of the burglary because his wife "might want to move into this house and wants to keep it open." In turn, although sitting unused for several months, the house was certainly not abandoned, but rather, was being maintained and held open as a potential permanent or temporary residence for his wife or other tenant. Therefore, as the house was not abandoned, we find it clear that the house on Dengler's property fits the definition of an "occupied structure" under R.C. 2909.01(C)(1). *See Jackson* at ¶ 33 (finding unused apartment unit undergoing renovations was an occupied structure even though the owner was temporarily absent); *State v. Bock*, 16 Ohio App.3d 146, 149-150 (12th Dist.1984) (finding house was an occupied structure where it was kept in reasonably good repair, contained at least some furniture, and was used as a dwelling on at least a temporary basis); *see also State v. Calderwood*, 194

Ohio App.3d 438, 2011-Ohio-2913, ¶ 16 (8th Dist.) (finding a house was an occupied structure where "the house maintained its residential purpose even though it was vacant"); *State v. Burgos*, 9th Dist. Lorain No. 05CA008808, 2006-Ohio-4305, ¶ 23 (finding a house was an occupied structure where it contained furnishings and was being maintained "a residential dwelling both inside and outside the house").

{¶ 20} Nevertheless, Braden argues the house in this case is analogous to that which was addressed by the Ninth District Court of Appeals in *State v. Anderson*, 9th Dist. Summit No. 26006, 2012-Ohio-3663. In that case, however, the house in question had been condemned and listed as "uninhabitable" and "abandoned" by the city of Akron. The record also contained evidence that the necessary repairs to the house were not being made, and that there was no evidence to conclude the repairs would ever be made. There was also evidence the house did not have any heat or water, and that, although the owner kept some personal items at the property, she had effectively abandoned her home when she went to live with her daughter. None of these facts are present here. The Ninth District's decision in *Anderson*, therefore, is clearly distinguishable from the case at bar. Accordingly, Braden's claim that the state failed to prove the house was an "occupied structure" under R.C. 2909.01(C)(1) is also without merit and overruled.

### Burglary in Violation of R.C. 2911.12(A)(3) Does Not Require Proof that the Defendant Entered a Structure Knowing it was "Occupied Structure"

{¶ 21} Finally, Braden argues his conviction must be reversed because the state failed to prove the necessary mens rea. According to Braden, because the statute "incorporates a knowing act through the requirement of a trespass," this also requires the state to prove "that the defendant knew a structure was an 'occupied structure.'" Braden's interpretation of the statute, however, adds an additional element that based on the plain language of R.C. 2911.12(A)(3) was clearly not intended by the General Assembly. Simply stated, had the

legislature intended to prohibit trespassing into "occupied structures" where the defendant knew the structure was in fact "occupied," it could have easily incorporated that additional requirement into the statutory language of R.C. 2911.12(A)(3) or through the definition of "occupied structure" provided by R.C. 2909.01(C). The General Assembly did not include such language, and neither shall we. It is well-established that this court "may not add or delete words" when construing a statute. *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 25, citing *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.*, 52 Ohio St.3d 144, 148 (1990). Therefore, Braden's final argument likewise lacks merit and is overruled.

## Conclusion

{¶ 22} In light of the foregoing, and having found no merit to any of the arguments advanced by Braden herein, Braden's single assignment of error is overruled.

{¶ 23} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.