[Cite as *State v. McClendon*, 2022-Ohio-1441.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-09-021 |
| | : | O P I N I O N |
| - vs - | | 5/2/2022 |
| | : | |
| NEATHEN McCLENDON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20210129

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

**BYRNE, J.**

{¶1} Neathen McClendon was convicted of two criminal offenses in the Fayette County Court of Common Pleas. McClendon appealed. We affirm McClendon's convictions.

## I. Procedural and Factual Background

{¶2} In June 2021, a Fayette County grand jury indicted McClendon on three counts: (1) count one – tampering with evidence; (2) count two – trafficking in cocaine; and

(3) count three – possession of cocaine. The indictment resulted from a search warrant executed at a residence in Washington Court House. Officers detained McClendon in a bedroom after forcibly entering the home. In the bedroom's ensuite bathroom, officers recovered small amounts of crack cocaine on the floor and evidence that suggested that McClendon had flushed contraband (likely more crack cocaine) down the toilet.

### A. Pre-Trial Discussion Concerning the Search Warrant

{¶3} At the final pretrial conference, McClendon's defense counsel said that he would be requesting a copy of the search warrant and could not say until he saw it whether he would be raising any challenge to the search warrant. During this conversation, McClendon interjected, stating that "it was an arrest warrant. Instead of a search warrant, because the residence that I was at it wasn't my residence at all." Ultimately, McClendon's counsel did not move to suppress the evidence obtained during the execution of the search warrant.

### B. The Jury Trial

{¶4} The matter proceeded to a jury trial. Before trial commenced, the court discussed pretrial matters with the prosecutor and defense counsel. During this conversation, McClendon remarked that he wanted to challenge the search warrant. He said that "they" (presumably the officers who conducted the search) had provided him with a warrant receipt "that says that ah they uploaded a digital copy of my signature on it, which I never signed." Besides claiming that the digital signature he was referring to was not his, McClendon also repeated his claim that the residence where he was detained was not his residence. McClendon also stated that he "never signed no paperwork like this, for them to get a warrant to come search (unintelligible) about me." In response, McClendon's defense counsel stated that he had determined that attempts to undermine or challenge the search warrant were not going to be beneficial to the case.

{¶5} Trial commenced and the state presented the testimony of three law enforcement officers who participated in the execution of the search warrant.

**1. Testimony of Deputy Travis Burden**

{¶6} Deputy Burden testified that he was a patrol deputy with the Fayette County Sheriff's Office. On March 22, 2021, he was assigned to the Fayette County/Ross County Joint Emergency Response Team. That day, the Response Team had been asked to assist with execution of a search warrant at a residence located at 323 Forrest Street, Washington Court House.

{¶7} Deputy Burden was assigned to the "Entry Team." His job was to enter the residence and detain anyone found inside. He was specifically assigned to search the second floor for persons who may be found there. Deputy Burden testified that the procedure for entry is to knock on the door loudly and announce, "Sheriff's office." If no one opened the door, law enforcement would force the door open and enter the residence.

{¶8} Deputy Burden testified that one of the team members knocked loudly on the door, two or three times. One of the team members also announced they were with the Sheriff's office and had a search warrant, loudly enough for anyone inside to hear. No one answered, so the deputies forced the door open. Deputy Burden then entered the residence. He estimated that three minutes passed between the first knock and the team forcing the door open and entering the home.

{¶9} Deputy Burden observed a female downstairs. But because he was assigned to search the second floor, not the first floor, Deputy Burden immediately proceeded upstairs. At the top of the stairs, he entered a bedroom to the left of the stairwell and observed McClendon lying on the bedroom floor. McClendon had his arms spread away from his body. McClendon was "breathing heavily" and was "out of breath." Deputy Burden detained McClendon. McClendon made a comment that "he only had weed," presumably

meaning marijuana. There was no one else found upstairs.

### 2. Testimony of Sergeant John Fausnaugh

{¶10} Sergeant Fausnaugh testified that he was part of the "Investigative Team" executing the search warrant. While the Entry Team was entering and securing the residence, he was in the back of the residence, watching for anyone who might try to escape. No one came out of the residence.

{¶11} After officers secured the residence, Sergeant Fausnaugh's job was to videotape the interior of the residence and then take photographs. Sergeant Fausnaugh testified about photographs that he took in the bedroom where deputies detained McClendon and in the bedroom's ensuite bathroom. Multiple photographs introduced at trial depicted the floor of the bathroom and small white objects on or near a shower mat next to the bathtub. Other photos depicted a "Tupperware"-style tray or lid near the base of the toilet and a plastic container on the shower mat where the white objects were located. Sergeant Fausnaugh also observed and photographed a bag containing over $2,500, which was found on a bed in the bedroom, and a "bin," found on a desk in the bedroom, which contained a digital scale, scissors, and a knife.

{¶12} Sergeant Fausnaugh observed droplets of water of various sizes on the bathroom floor, near the toilet, and "about the toilet seat." The water droplets and their locations led him to the conclusion that someone had tried to dispose of drugs by flushing them down the toilet.

{¶13} Sergeant Fausnaugh testified that the white objects were collected into evidence and sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing. At BCI, the white objects tested positive for cocaine.

### 3. Testimony of Detective Treg Brown

{¶14} Detective Brown testified that he was also present during the execution of the

search warrant and entered the house after it had been secured. Besides McClendon, there was a female at the residence named Morgan Coil, as well as a 3-week-old infant. McClendon and Coil were the parents of the infant.

{¶15} Detective Brown testified about "off-white rocks" found on the bathroom floor that he suspected to be crack cocaine and that were collected into evidence. A clear plastic container was found closer to where the off-white rocks were found, and this container appeared to correspond to the tray or lid photographed lying near the base of the toilet.

{¶16} On cross-examination, Detective Brown testified that he believed that the plastic container had held crack cocaine. He did not have it tested for trace amounts of cocaine because BCI would not test for trace amounts and the Fayette County Sheriff's Office had no other way to test for trace evidence.

{¶17} Through cross-examination of Sergeant Fausnaugh, McClendon's counsel introduced several photographs of other items found in the bedroom where McClendon was detained. These items included a jar containing what appeared to be marijuana. Under cross-examination, Sergeant Fausnaugh agreed that scissors were more consistent with marijuana use rather than crack cocaine use, but he maintained that scissors may also be consistent with preparation of crack cocaine. And Detective Brown agreed on cross-examination that a buyer of narcotics might use a digital scale to ensure that they were receiving the amount sold to them.

### 4. Verdict and Sentence

{¶18} McClendon presented no evidence at trial. Upon the conclusion of the trial, the jury returned guilty verdicts on tampering with evidence (count one) and possession of cocaine (count three). The jury returned a not guilty verdict on trafficking in cocaine (count two). The court issued a judgment entry of conviction and sentenced McClendon to a prison term.

## II. Law and Analysis

{¶19} McClendon appealed, raising three assignments of error. McClendon presents his first two assignments of error together, and we will address those assignments in the same manner.

{¶20} Assignment of Error No. 1:

{¶21} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT, WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶22} Assignment of Error No. 2:

{¶23} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST APPELLANT, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} The generic phrasing of McClendon's assignments of error suggests he is challenging all his convictions—that is, his convictions for tampering with evidence and possession of cocaine. However, McClendon only presents argument about the tampering with evidence count in the body of his brief. App.R. 12(A)(1)(b) provides that we must determine an appeal on its merits on the assignments of error set forth in the briefs under App.R. 16. In turn, App.R. 16(A)(7) obligates the appellant to include within his or her brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides that we "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Because McClendon has not set forth any argument concerning count three, we need not address whether his conviction for possession of cocaine was supported by sufficient evidence, or whether it was against the manifest weight of the evidence. *See State v.*

*Constable*, 12th Dist. Clermont No. CA2006-12-107, 2007-Ohio-6570, ¶ 5-8.

**{¶25}** As to the tampering charge, McClendon argues that the state presented insufficient evidence that he knew an official proceeding or investigation was in progress or that he destroyed or removed evidence. He contends that his conviction resulted from impermissible inference stacking. For the same reasons, he argues that the jury lost its way in convicting him of tampering with evidence and that his conviction was against the weight of the evidence.

**{¶26}** When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶27}** A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

**{¶28}** In reviewing the evidence, an appellate court must be mindful that the original

trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

{¶29} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15, *quoting State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶30} The jury found McClendon guilty of tampering with evidence in violation of R.C. 2921.12(A)(1). That statute provides, "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." R.C. 2921.12(A)(1).

{¶31} As stated above, McClendon argues that the state failed to present sufficient evidence, proving beyond a reasonable doubt, that he knew an investigation was in progress or was likely to be implemented, and that the jury lost its way in so finding. But Deputy Burden testified that the Entry Team members loudly knocked on the door and loudly announced they were with the sheriff's office and were executing a search warrant. They knocked and announced several times over the course of three minutes before forcing entry. Deputy Burden stated that the level of noise was such that he believed that anyone

- 8 -

inside the home would have been able to hear the knocking and the announcement. Deputy Burden testified that he kept announcing "Sheriff's office" after entering the residence.

**{¶32}** Deputy Burden made his way upstairs, where he found McClendon lying prone on the floor with his arms stretched out. McClendon's position would suggest he knew law enforcement officers were in the home and that he would soon be detained. Given this testimony, we do not find that the jurors lost their way in finding that the state proved that McClendon had knowledge of an official proceeding or investigation under R.C. 2921.12(A)(1).

**{¶33}** Next, McClendon argues that the state failed to present sufficient evidence that he altered, destroyed, concealed, or removed anything in violation of R.C. 2921.12(A)(1), and that the jury lost its way in finding that he did so. But there was an abundance of circumstantial evidence, which, when viewed collectively, indicated that McClendon disposed of narcotics evidence by flushing it down the toilet. *Jenks,* 61 Ohio St.3d at 272-273 (circumstantial evidence has the same probative value as direct evidence and is sufficient to prove the elements in a criminal case). That evidence consisted of water droplets strewn about the bathroom in various locations, including near the toilet and farther away from it. The jury could have concluded that this suggested that McClendon threw objects into the toilet bowl with sufficient force to spray water outside the toilet.

**{¶34}** A part of a plastic container, appearing to be a tray or lid, was near the base of the toilet and a corresponding container was found on the other half of the bathroom floor, where small fragments of crack cocaine were recovered. This would circumstantially indicate that the container contained the narcotics that McClendon had flushed down the toilet and that some of those narcotics had not been successfully flushed.

**{¶35}** The overall condition of the bathroom was clean and tidy. The haphazardly scattered plastic container pieces as well as the crack cocaine rocks strewn about the floor

contrasted with this tidiness. The jury could have concluded that this evidence suggested that McClendon engaged in a frenzied but failed attempt to dispose of all the narcotics from the plastic container.

{¶36} Finally, McClendon was the only person located on the second floor when the search warrant was executed. His behavior upon being located by police—that is, lying prone in the bedroom and breathing heavily—circumstantially corroborated a frenetic attempt to dispose of narcotics. His unprompted statement that he "only had weed" evidences a guilty mind and an effort to distract officers from his attempts to destroy the crack cocaine that officers recovered in the nearby bathroom. Given this testimony and the corresponding photographs introduced at trial, we do not find that the jury lost its way. *See State v. Moffett*, 6th Dist. Sandusky No. S-10-056, 2012-Ohio-1107 (affirming tampering with evidence conviction based in part on circumstantial evidence of narcotics having been flushed down toilet following knock-and-announce search warrant, including water on the toilet seat and on the bathroom floor).

{¶37} The inferences in this case were not derived wholly from other inferences. *See State v. Braden*, 12th Dist. Preble No. CA2013-12-012, 2014-Ohio-3385, ¶ 12, quoting *State v. Cooper*, 147 Ohio App.3d 116, 126 (12th Dist.2002) ("It is well-established that '[a] trier of fact may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts.'"). Instead, all inferences as to McClendon's conduct before Deputy Burden's arrival were based on evidence presented to the jurors. Thus, the jury was not required to impermissibly stack inferences to find McClendon guilty of tampering with evidence. *See Braden* at ¶ 13, quoting *State v. Maynard*, 10th Dist. Franklin No. 11AP-697, 2012-Ohio-2946, ¶ 27 (the rule against stacking inferences "does not prohibit using parallel inferences with additional facts, nor does it 'prohibit the drawing of multiple, separate inferences from the same set of facts.'").

{¶38} For all these reasons, we find that the jurors did not lose their way in convicting McClendon and that his conviction was supported by the greater weight of the evidence. Our finding that McClendon's conviction was not against the manifest weight of the evidence is dispositive on the issue of sufficiency of the evidence. *Billingsley*, 2020-Ohio-2673, at ¶ 15. We therefore overrule McClendon's first and second assignments of error.

{¶39} Assignment of Error No. 3:

{¶40} TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION & ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶41} McClendon argues that his trial counsel provided constitutionally defective assistance by failing to move to suppress evidence obtained via the search warrant. In support, McClendon cites his statements contesting the search warrant made on the record before trial. McClendon argued that the search warrant was invalid because the return stated that he had provided his electronic signature, when he denied doing so.

{¶42} To prevail on his ineffective assistance of counsel claim, McClendon must show that his trial counsel's performance was deficient, and that he was prejudiced as a result. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Petit* at ¶ 39. Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, McClendon must establish that, but for trial counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694.

**{¶43}** The failure to move to suppress evidence does not constitute per se ineffective assistance of counsel. *State v. Smith*, 12th Dist. Fayette No. CA2014-05-013, 2015-Ohio-1094, ¶ 44. To establish ineffective assistance of counsel for failure to move to suppress, a defendant must be able to prove that there was a basis for suppression of the evidence in question. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. Even when there is some evidence in the record to support a motion to suppress, "an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile." *State v. Dominguez*, 12th Dist. Preble No. CA2011-09-010, 2012-Ohio-4542, ¶ 20.

**{¶44}** McClendon supplemented the appellate record with a copy of the search warrant and its attached return, titled "RETURN;RECEIPT; INVENTORY OF SEARCH WARRANT." There is a signature line on this document where McClendon's signed name appears. While the record is unclear on what document McClendon was referring to, this is presumably the document.

**{¶45}** In his appellate brief, McClendon fails to articulate how this document, or how McClendon's claim that the document falsely stated that he provided his digital signature, would support the filing of a motion to suppress. This is the case because the search warrant was not authorized based on any information or averments in the search warrant return, as the return on its face was clearly prepared *after* the search warrant was executed. McClendon also appears to misread the return when he contends that the return states he provided his digital signature. Upon review, we find no such language in the return. Instead, the only reference to anything "digital" or "electronic" in the return is in the space for the detective who completed the form to provide an inventory of property taken pursuant to the warrant. In that space, the detective wrote, by hand, "Image copy of Electronically Stored Data." This reference is unclear, but perhaps it was a reference to the cell phone that

Detective Brown testified was found in the bedroom and was taken for later review. In any case, an "Image Copy of Electronically Stored Data" is not a digital signature.

**{¶46}** Moreover, McClendon repeatedly disclaimed that 323 Forrest Street was his residence. Fourth Amendment privacy rights are "'personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961 (1969). As a result, a person who alleges error using evidence taken from someone else's property cannot claim that his own rights have been violated. *State v. Coleman*, 45 Ohio St.3d 298, 306 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Thus, to challenge a search or seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such expectation. *State v. Renner*, 12th Dist. Clinton No. CA2002-08-033, 2003-Ohio-6550, ¶ 9. McClendon's disclaimer of 323 Forrest as his residence undercuts any argument that he had a reasonable expectation of privacy under the Fourth Amendment or the Ohio Constitution and that he could have mounted a successful challenge to the search warrant.[1]

**{¶47}** The record reflects that McClendon's counsel obtained a copy of the search warrant, reviewed it, and determined that it would not be beneficial to attempt to challenge. There is nothing in the record or on the face of the search warrant that would suggest that this decision was anything but a reasonable exercise of professional judgment. McClendon has failed to prove a basis to suppress the evidence collected by law enforcement and therefore is unable to establish ineffective assistance of counsel. *Brown*, 2007-Ohio-4837

---

1. With certain exceptions not applicable here, the Ohio Supreme Court has held that the Ohio Constitution affords protections coextensive with the Fourth Amendment. *State v. Robinette*, 80 Ohio St.3d 234, 245 (1997); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23.

at ¶ 65.  We overrule McClendon's third assignment of error.

## III. Conclusion

**{¶48}** For the reasons discussed above, we find that McClendon's conviction for tampering with evidence was supported by sufficient evidence as well as the greater weight of the evidence.  We also find that McClendon has not established that his trial counsel provided ineffective assistance by failing to move to suppress evidence obtained through the search warrant.

**{¶49}**  Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.